IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHELLY DeGUILIO                                                          PLAINTIFF

V.                              NO. 15-5024

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration              DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Shelly DeGuilio, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her DIB application on November 9, 2011, alleging an inability to work since October 19, 2009, due to major depressive disorder and personality disorder. (Tr. 160-161, 179, 183). An administrative hearing was held on April 18, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 68-100).

By written decision dated June 5, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – degenerative disc disease of the cervical and lumbar spine; gastroesophageal reflux disease; major depressive disorder; and post-traumatic stress disorder. (Tr. 14). However, after

1

reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> Perform light work as defined in 20 CFR 404.1567(b) except she is occasionally able to climb ladders, ropes or scaffolds, is limited to occasional overhead reaching bilaterally, must avoid all exposure to vibration, is limited to brief, incidental contact with the general public, and is limited to frequent interaction with co-workers and supervisors.

(Tr. 16-17).  With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to return to her past relevant work, but there were other jobs Plaintiff would be able to perform, such as garment folder, cleaner/polisher, and electrode cleaner. (Tr. 23-24).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 4, 2014. (Tr. 1-5).  Subsequently, Plaintiff filed this action. (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties. (Doc. 7).  Plaintiff has filed a pro se brief, Defendant has filed a brief, and the case is now ready for decision. (Docs. 17, 18).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a

2

reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the

3

impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.   Discussion:

In her pro se brief, Plaintiff states that she has been under the care of Dr. Ester Arejola Salvador, staff psychiatrist at Ozark Guidance Center, Inc. (OGC), since 2010, and suffers with mental impairments; that she has had difficulty maintaining work throughout her life;  that her depression, anxiety and personality disorders affect her in every aspect of her life; that her depression and anxiety cause her to have concentration and memory problems; and that her age, scoliosis and degenerative disk disease keep her from getting certain jobs, "but it is my depression that keeps me from maintaining full time employment." (Doc. 17). The Court will construe Plaintiff's arguments to be that there is not substantial evidence to support the ALJ's finding that she was not disabled due to a mental or physical impairment.

#### A.  Credibility Analysis:

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 19). The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3)

4

precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

With respect to Plaintiff's alleged mental impairments, the ALJ found Plaintiff had mild restriction in her activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 16).  The ALJ noted her medications (Tr. 19), and found that although her impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 19). The ALJ noted that Plaintiff had been performing light work on a part-time basis since September of the previous year and acknowledged that working was good for her. (Tr. 19).

The ALJ discussed Plaintiff's activities of daily living, noting that Plaintiff acknowledged she was able to perform all activities of daily living except on the occasional day she had a "meltdown." (Tr. 16).  Plaintiff was able to perform household chores or yard work, take care of her personal needs, care for her dogs, drive, shop, and work part-time (24 hours a week) at a clothing store, where she put out clothing, priced them, tagged them, and performed customer service. (Tr. 16, 19, 78, 192-195)  Plaintiff also testified that she was taking Citalopram, Wellbutrin, Abilify, Tramadol, and a generic version of Valium, and had

5

no side effects. (Tr. 92).   The ALJ also addressed the x-rays and MRIs , noting that Plaintiff showed limitations in cervical range of motion. (Tr. 19-20).   He incorporated Plaintiff's limitations in his RFC.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### B.  RFC Determination:

As stated earlier, the ALJ found Plaintiff would be able to perform light work with certain postural limitations.   RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).   It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment.   20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."   Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).   "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

6

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id

The medical records indicate that prior to Plaintiff's onset date of October 19, 2009, Plaintiff was seen by Dr. Salvador, beginning in 2006. (Tr. 296-297, 301, 303, 305, 307, 308, 310, 312, 314, 316, 318, 320, 327, 329). Dr. Salvador's most recent diagnosis, as set forth in the September 25, 2009 record, is as follows:

> Axis I:      Major Depressive Disorder recurrent, moderate to severe
>              without psychosis
>
> Axis II:     Personality Disorder NOS
>
> Axis III:    Infection of right forearm secondary to dog bite, improved.
>              There is no more swelling or redness and she is already able to
>              make use of it, close and open it, but there is still problem with
>              grip
>
> Axis IV:     Problems with primary support group, problems related to
>              social environment, economic problems, problems related to
>              interaction with the legal system/crime
>
> Axis V:      50-55

(Tr. 327).

After Plaintiff's onset date, on November 17, 2009, Dr. Salvador reported that Plaintiff was not feeling well because she had a motor vehicle accident the prior month on October 19, 2009. (Tr. 329). As a result of the accident, Plaintiff had to have a splenectomy on December 7, 2009. (Tr. 283, 331).

On October 8, 2010, Plaintiff reported to OGC that she felt better right away when she took her medications, and when she missed them, she felt dizzy. (Tr. 346). Plaintiff was thereafter treated intermittently at OGC, and on October 19, 2011, it was reported that Plaintiff did not return/dropped out of treatment. (Tr. 351).

When Plaintiff saw her treating physician, Dr. Richard Hill, on December 14, 2011, she reported that she needed help to get antidepressants. (Tr.416). Dr. Hill reported that Plaintiff was on Wellbutrin and Lexapro and had done well with them, and she needed help with patient assistance. (Tr. 416). On December 15, 2011, Plaintiff was seen by Judith Levenson, LPC. (Tr. 444). Ms. Levenson reported that Plaintiff had been having ongoing problems with depression and PTSD since she was bitten by a dog several years prior thereto. She reported that Plaintiff's depression intensified about six years prior, when she developed a gambling addiction, began stealing to support her habit, was convicted of theft, and had trouble maintaining jobs. She also reported that Plaintiff was looking for work, although she was also applying for disability. (Tr. 444).

On May 2, 2012, non-examining consultant, Dave Sanford, Ph.D., completed a Mental RFC Assessment of Plaintiff. (Tr. 117-118). Dr. Sanford found Plaintiff suffered from no cognitive impairment, her intellect was average, and her insight and judgment were intact. (Tr. 119). He indicated that she would do well with jobs that did not have a lot of

8

changes. (Tr. 118). He also found she was able to interact in superficial interactions, but would benefit from not doing work that required more than occasional interactions. (Tr. 118).

Plaintiff saw Dr. Hill on January 11, 2012, and advised him that she was applying for disability because of depression. (tr. 414). She had also had an increase in neck and back pain, and was awaiting approval of a MRI. (Tr. 414). Dr. Hill wrote a letter of the same date, stating that he expected that Plaintiff would be unable to work during the next year, and hoped treatment could be successful for long term rehabilitation. (Tr. 374). He assessed her with anxiety, major depression, recurrent, and cervicalgia. (Tr. 415).

On February 20, 2012, Plaintiff was admitted at Portneuf Medical Center for increasing suicidal ideation in reaction to multiple stressors.(Tr. 376). She was given a GAF score of 30 on admission, was kept in the hospital through February 26, 2012, and her GAF score upon discharge was 50. (Tr. 376). Plaintiff continued to see Dr. Hill after that, and on April 20, 2012, Dr. Hill wrote another letter, stating that Plaintiff continued to have problems maintaining focus and concentration and would continue to struggle with socialization and fatigue to a degree that "she will not be able to maintain any regular employment for the foreseeable future." (Tr. 408).

On February 5, 2013, Plaintiff was seen by Terri Muegerl, LCSW, of Behavioral Treatment Services. (Tr. 436). Ms. Muegerl diagnosed Plaintiff as follows:

    Axis I:      Major Depressive Disorder, Recurrent Severe, without
                 psychotic features
                 Generalized Anxiety Disorder
                 Kleptomania

    Axis II:     V71.09

    Axis III:    Severe back pain

    Axis IV:     Inadequate Finances

9

      Axis V:        45

(Tr. 436).  On March 21, 2013, Ms. Muegerl reported that she had been treating Plaintiff since January of 2013, and that because Plaintiff's mental, emotional and physical symptoms were so severe, they had significantly made it unlikely that she could keep or work a job more than part-time. (Tr. 483).  Ms. Muegerl also completed a Mental RFC Statement on April 11, 2013, wherein she opined that Plaintiff's mental, emotional and physical symptoms were so severe that they had significantly made it unlikely that she could keep or work a job more than part-time. (Tr. 519).

      At the time of the hearing held before the ALJ, Plaintiff was working 24 hours a week at a clothing store. (Tr. 78).  She testified that her shift lasted about six hours and that she spent five and a half of those hours on her feet. (Tr. 80).  Plaintiff stated that working at that job had made her mental issues better because she needed to get out in society and be social. (Tr. 83).

      The ALJ gave the opinion of Ms. Muegerl less weight, "as it appears to be a document that helps qualify the claimant for ongoing treatment and is based on all of the claimant's subjective complaints rather than serving as a snapshot of how she is functioning at that period of time." (Tr. 21).  With respect to Dr. Hill's opinions, the ALJ recognized that Dr. Hill had a long term examining and treating relationship with Plaintiff within his area of specialization, and that it was clear that Plaintiff had struggled with depression and anxiety since well before her alleged onset date. However, he emphasized that "exacerbation of her symptoms is very situational, as the claimant has been in multiple unfortunate circumstances and dealing with what appears to be a consistently chaotic family situation."  (Tr. 22). The ALJ also noted that Dr. Hill's own records consistently noted that Plaintiff's depression scale

ranged around a 3 – which was relatively mild, that her estimated GAF scores consistently placed her in a category of "moderate" symptoms, and that Plaintiff generally reported that her medications were effective in helping to lessen psychiatric symptoms. (Tr. 22).

With respect to Plaintiff's physical limitations, in her Function Report – Adult, dated December 8, 2011, Plaintiff reported that: sometimes, if she had any money, she would go to thrift stores; would take care of her pets by feeding and watering them and occasionally taking them for walks; had no problem with personal care; prepared her meals; was able to do all of the house and yard work; drove and shopped for groceries; and went to the smoke shop for cigarettes. (Tr. 192-195).

Plaintiff presented herself to the Portneuf Medical Center on January 2, 2012, stating that she had painted on Friday and had developed pain in her back between her shoulder blades. (Tr. 359). It was reported at that time that Plaintiff smoked one pack of cigarettes per day and had smoked for 30 years. (Tr. 359). X-rays of her thoracic spine revealed scoliosis of the thoracolumbar spine, and x-rays of her cervical spine revealed degenerative changes at C5-6 and mild discogenic disease. (Tr. 3620.

On May 2, 2012, non-examining consultant, Dr. John Crites, completed a Physical RFC assessment, opining that Plaintiff could perform medium work. (Tr. 116). On June 21, 2012, Plaintiff saw Dr. Hill, complaining of a rash on her hands and increasing knee pain. (Tr. 454). July 5, 2012 x-rays of her knees revealed minimal, barely delectable osteoarthritis changes medial compartment in both knees. (Tr. 431). A MRI of Plaintiff's lumbar spine on July 5, 2012, revealed: severe levoscoliosis, centered at L2, measuring approximately 29 degrees; some desiccation with mild diffuse bulging at L4-5, mild bilateral facet arthropathy resulting in perhaps some minimal spinal stenotic changes with minimal neuroforaminal

11

narrowing; at 3-4 minimal bulging; mild facet and ligamentum flavum hypertrophy, with no significant spinal stenosis; at 2-3 minimal desiccation and bulging with mild facet arthropathy, with no spinal stenosis; and at L1-2, mild narrowing and desiccation, mild bulging and arthropathy, with no stenosis. (Tr. 433). On August 3, 2012, Plaintiff reported to Dr. Hill that overall, her pain was better with Neurontin. (Tr. 463). A MRI of Plaintiff's cervical spine, performed on August 9, 2012, revealed moderate degenerative disc changes with a broad-based central disc protrusion at C5-6 that mildly flattens the ventral surface of the cord, and a small right paracentral disc protrusion at C3-4, and a small central disc protrusion at C6-7. (Tr. 435). Plaintiff thereafter saw Kerry Reynolds, PA, between November 15, 2012, and March 12, 2013. On December 31, 2012, Plaintiff reported to Ms. Reynolds that her back was not hurting as much. (Tr. 477). On March 12, 2013, Plaintiff reported that she felt the "Best I've felt in a long time." (Tr. 481).

The ALJ addressed the x-rays and MRIs and concluded that while activities such as standing, walking and bending were ostensibly not significantly affected beyond limiting the claimant to light work, the findings did support Plaintiff's allegations of inability to lift or reach above shoulder height without exacerbating cervical symptoms. (Tr. 19). The ALJ concluded that Plaintiff's degenerative disc disease and scoliosis limited her to light work with no more than occasional overhead reaching. (Tr. 20).

The Court finds that the ALJ considered all of the medical records, the observations of her treating physicians, and Plaintiff's descriptions of her limitations, and that there is substantial evidence to support the ALJ's RFC determination.

### C. Hypothetical Questions:

At the hearing, the ALJ posed the following hypothetical question to the VE:

> Q: Mr. Granite, I'd like for you to assume the following: An individual with the Claimant's age, education and work background. Such an individual is limited to only light work as defined in the regulations. Climbing of ropes, ladders and scaffolds should be limited to only occasional. She is limited to only occasional overhead reaching with both upper extremities. She is also limited to having no direct exposure to vibrations. She is limited to work involving no more than brief and incidental contact with members of the general public. Her interactions with coworkers and supervisors should be on no more than a frequent basis. Is such an individual able to perform any of Claimant's past work?
>
> A: No, Your Honor. Three of the jobs are light or sedentary but all have more than brief contact with the public.
>
> Q: Is there any other work available for such a person?
>
> A: I believe so under that hypothetical. There's a position called a garment folder…a cleaner polisher…an electrode cleaner – all light. . . .
>
> Q: If such an individual were limited to only sedentary work, defined in the regulations, with the same additional restrictions as in the second hypothetical, would there be work available?
>
> A: There would be, Your Honor. …touch-up inspector…dowel inspector…semi-conductor bonder. . .
>
> . . .
>
> Q: Is your testimony consistent with the Dictionary of Occupational Titles?
>
> A: I believe so.
>
> . . .

(Tr. 95-98).

The Court observes that two of the jobs identified by the VE - garment folder and cleaner/polisher - require constant reaching, and the job of electrode cleaner requires frequent reaching, according to the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO). The ALJ's RFC provides that Plaintiff could "occasionally do overhead work bilaterally and can only occasionally do rapid and repetitive

13

flexion and extension of the wrists." (Tr. 10).   Consequently, there is a conflict between the DOT and the VE's testimony. See Moore v. Colvin, 769 F.3d 987, 989 (8th Cir. 2014)(stating the ALJ failed to resolve an apparent conflict when a hypothetical limited a person to only occasional overhead reaching, and the VE identified jobs which the SCO said required frequent reaching).

When an apparent conflict between the DOT and VE testimony exists, an ALJ has an affirmative responsibility to address the conflict. Young v. Apfel, 221 F.3d 1065, 1070 (8th Cir. 2000). If evidence from the VE appears to conflict with the DOT, the ALJ must obtain "an explanation for any such conflict." Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007). An ALJ is not absolved of a duty to investigate any conflict simply because a VE responded "yes" when asked if his testimony was consistent with the DOT. Kemp v. Colvin, 743 F.3d 630, 632-633 (8th Cir. 2014). In this case, the ALJ did ask the VE if his testimony was consistent with the DOT. (Tr. 98).  It is not clear whether the VE recognized the possible conflict between the hypothetical and the positions he identified, and no explanation for the conflict was offered at the hearing. Although in his decision, the ALJ stated that he determined the VE's testimony was consistent with the information contained in the DOT (Tr. 24), there is no indication that he was aware of the conflict or how he made such a determination.  The Court therefore believes this failure to resolve the conflict is reversible error. See e.g., Daniels v. Colvin, 2015 WL 224668 (W.D. Ark., Jan. 15, 2015).  Based upon the foregoing, the Court concludes the ALJ did not resolve a conflict between the VE's testimony and the DOT and therefore, the VE's testimony did not constitute substantial

evidence. On remand, the ALJ is instructed to identify and obtain a reasonable explanation for any conflict between the VE's testimony and the DOT.[1]

### IV.     Conclusion:

Accordingly, having carefully reviewed the record, the Court finds the ALJ's decision regarding Plaintiff's ability to perform the jobs he identified is not supported by substantial evidence, and therefore, the matter should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 29th day of January, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

---

[1] In Kemp v. Colvin, 743 F.3d 630, 633 n.3 (8th Cir. 2014), the Eighth Circuit noted that the necessary resolution of the identified issue may be accomplished by written interrogatories posed to the VE, and thus another Administrative hearing may not be required.